UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
...............................................................x

OBI DANIEL

         Plaintiff,     Docket No: 17-cv-5171

  -against-         **AMENDED COMPLAINT**

MT. LORETTO MISSION FOR THE IMMACULATE  JURY TRIAL
VIRGIN FOR THE PROTECTION OF HOMELESS   REQUESTED
AND DESTITUTE CHILDREN, INC.,

         Defendant.
...............................................................x

  Plaintiff, by his attorney, ALBERT VAN-LARE, ESQ., complaining of the Defendant alleges the following:

## JURISDICTION AND VENUE

1. Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3. State law matters in this Complaint are brought pursuant to this Court's Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367.

## PARTIES

4. Obi Daniel (Plaintiff), was employed as a direct care worker by Defendant from 2006 until he was terminated on November 17, 2016.

5. Defendant Mt. Loretto Mission for the Immaculate Virgin for the Protection of Homeless and Destitute Children, Inc., was Plaintiff's employer from November 2006 until November 17, 2016.

## FACTUAL ALLEGATIONS

6. Plaintiff is an African-American whose national origin is in the Federal Republic of Nigeria, West Africa.

7. Plaintiff is over fifty years old.

8. Plaintiff was employed by the Defendant as a direct care worker from 2006 until his improper termination in November of 2016.

9. Plaintiff was assigned to Defendant's facility at Bedell Avenue, Staten Island, New York, where he functioned as a direct care worker providing assistance to Defendant's clients for their personal and home care needs.

10. Plaintiff's responsibilities included medication administration, cleaning of the clients, transportation of the clients for medical treatment purposes, and general instructions on how the clients will take care of their own needs.

11. Plaintiff performed his duties meritoriously and was well respected by his colleagues for his disciplined work and professionalism.

12. Plaintiff performed his own responsibilities and assisted other less experienced employees with solving problems concerning medication administration, state regulations and Defendant's policies.

13. At Defendant's facility on Bedell Avenue, Plaintiff reported to Affie Hunte (Hunte) who was his supervisor.

14. Hunte is a relative of the facility's manager, Mr. Black.

15. Hunte and Black are not of the same national origin as the Plaintiff. They are not of Nigerian national origin.

16. Plaintiff was assigned regular working hours totaling thirty-two hours per week and was paid $17 per hour.

17. The assistant director of the facility where Plaintiff was assigned is Ashton Black (Black).

18. Black, the assistant director, is of Caribbean/West Indian decent.

19. Black has shown resentment towards Plaintiff over a period of several years, dating back to 2012 and continuing until Plaintiff was terminated because of his national origin as a Nigerian.

20. Black is one of the most senior management staff assigned to the Hylan Boulevard facility.

21. Black expressed resentment towards Plaintiff based on Plaintiff's national origin and age in 2014, 2015 and 2016.Black has a long history of abusing employees' rights and retaliating against employees for invoking their rights under EEO laws. Affie, a staff who is related to Black, and is of a different national origin from the Plaintiff was allowed to abuse staff, including the Plaintiff. Ashton would write Plaintiff up and ensure that the write up would raise false issues that were portrayed as legitimate against Plaintiff. Affie would thereafter be asked to sign the write up by Black. Plaintiff is the only person who was subjected to a different treatment because of his national origin.

22. Affie, Plaintiff's supervisor also expressed resentment towards Plaintiff because Plaintiff frequently reported inappropriate conduct and inappropriate harassment to the union.

23. Affie also in 2015 and 2016 referred to Plaintiff as too old to do his job because young people are not that slow.

24. Black told Plaintiff that Plaintiff complains too much and that a man as old as Plaintiff should not frequently complain.

25. Affie also told Plaintiff in August of 2014 that Plaintiff was getting too old for the job because all Plaintiff did was complain to the union.

26. Affie also made inappropriate remarks about Plaintiff's national origin by saying Plaintiff is just another corrupt and lying Nigerian and that Nigerians are corrupt and arrogant.

27. Affie sometime in September or October 2016 also said Plaintiff is an example of an old Nigerian man who should go back to corrupt Nigeria.

28. These anti-Nigerian comments were reported to Black who said he would look into the matter but did not do anything.

29. In March of 2016 a co-worker, Sharon Hayes-Dupree (Dupree), was harassing Plaintiff over a television remote control. Dupree contacted Affie the following day falsely alleging that Plaintiff verbally attacked her. Affie reported the false allegation to Black, telling Plaintiff, at that time, that she (Affie) believes that it was all Plaintiff's fault and that plaintiff's arrogance as a Nigerian is why some people may not like him.

30. Black did not take any steps to investigate the veracity of this complaint and instead he called Plaintiff into a meeting that included Plaintiff, Hunte, and Black himself.

31. At the meeting, Black again referred to Plaintiff as an old man who should behave responsibly, and he berated plaintiff by telling him that we are not in Nigeria and that Nigerian mentality would not be tolerated by him.

32. Although Plaintiff did not yell at Dupree or any other employee, Affie simply took advantage of the false accusations against Plaintiff to make references to his age, and national origin and to embarrass him unnecessarily.

33. Plaintiff is neither corrupt nor arrogant.

34. The day following the March 2016 meeting, Affie referred to Plaintiff as an old man who should stop doing two jobs because he is too old to be juggling two separate jobs and causing problems for the Defendant.

35. Plaintiff in fact has two job that he performed meritoriously out of economic necessity.

36. Black also met with Plaintiff on September 28, 2016 in Black's office. Hunte was present at this meeting.

37. The September 28, 2016 meeting with Black was requested by Plaintiff to discuss the employer's rule and regulations on pre-pack medication.

38. Although the meeting was called to discuss the employer's rule on pre-pack medication, Black inappropriately referred to Plaintiff's age again. Plaintiff informed Black that Mohammed Sissay, another co-worker, was getting paid to cut the client's hair and that was against employer's policy. Rather than consider Plaintiff's allegation and stop the violation of the employer's policy by another employee who was collecting the money from the clients in exchange for cutting the clients' hair, Black rudely castigated the Plaintiff by telling Plaintiff to mind his own business and that at Plaintiff's age he should not be involved in other people's business. He further told Plaintiff not to act as a kid but act as an adult.

39. Plaintiff felt extremely humiliated by the continuous, unnecessary, and invidious references to his age and national origin.

40. At the September 28, 2016 meeting Plaintiff also informed Black that Mohammed, Plaintiff's co-worker had a car dealer's license and that Mohammed always purchased cars for sale and he would park the cars on the employer's property while waiting to sell them. The employer's policy prohibits conducting private business while at work or parking cars for sale on employer's premises.

41. Black did not do anything to investigate Plaintiff's complaint regarding the parking of cars for sale on employer's premises. Instead Black repeated the statement to Plaintiff that

Plaintiff should behave like a responsible adult that he is instead of creating problems for young people attempting to supplement their income by engaging in legitimate business.

42. Black also told Plaintiff that he does not understand why Nigerians want to behave differently from other Africans working with him in his facility.

43. At the September 28, 2016 meeting, Plaintiff also informed Black that Hunte was receiving massages from a client who is of a different sex and asked Black to clarify if this was against employer's policy. Black received a phone call before he could provide Plaintiff with an answer, Black however made a comment that Plaintiff was acting like a baby in making all of these complaints. Black laughed at Plaintiff and simply continued with his telephone conversation.

44. Affie Hunte would constantly use the terms old man, you are too old for this job, I will look for younger people, why are you doing things so slow in addressing disparaging and ethnically insulting remarks to the Plaintiff.

45. On November 15, 2016, Plaintiff was at work preparing medication for his clients. Plaintiff's co-worker Alexis Payne (Payne), was involved in a loud telephone argument, over an hour with someone in a discussion unrelated to work which is a violation of agency policy. Plaintiff objected to the loud discussion Payne was having with her friend because her discussion was very distracting. Plaintiff was falsely reported to Black by Payne claiming that Plaintiff used unprofessional language.

46. The Defendants and their agents engaged in acts of intimidation against plaintiff when three staff including James Walker, Affie Hunte, and Mohammed Sissay approached Plaintiff in an intimidating and derogatory manners to serve him papers in reference to the

false charge from Payne that Plaintiff used unprofessional language. On this occasion Affie again referred to Plaintiff as an old man causing problems.

47. Plaintiff asked Payne to lower her voice, but she refused, and she continued to yell at Plaintiff and called Plaintiff a Nigerian gangster and stated that she would ask everyone to watch their credit cards when Plaintiff is at work because Nigerians engaged in credit card fraud.

48. After referring to Plaintiff's national origin, Payne called Plaintiff a Nigerian credit card fraudster. Payne has made comments like this several times in the past.

49. Although Plaintiff asked Payne to stop referring to him as a Nigerian gangster, Payne did not stop. Payne would frequently refer to Plaintiff as a credit card fraud maker and follow her remark with statements like, "you and your Nigerian people engage in credit card fraud and I know I cannot trust you with my personal information".

50. These derogatory statements made by Payne referencing Plaintiff's national origin was brought to Black's attention on November 17, 2016 and at previous times when ethnically derogatory statements were made.

51. Black did not do anything to investigate the matter or discipline Payne for these derogatory statements. He would instead attack plaintiff rather than investigate his complaint.

52. Black himself has used language that referred to Plaintiff as old man and arrogant Nigerian.

53. During the discussion between Plaintiff and Payne on November 15, 2016, Payne threatened Plaintiff that she would report him to Black and that Black would discipline Plaintiff because she knows that Black did not care for Plaintiff.

54. This atmosphere where Plaintiff was subjected to harassment because of his national origin and age continued until Plaintiff was fired in November 2016.

55. Plaintiff met with Black, Executive Director Claire Attala, and Hunte on November 17, 2016. At the meeting Plaintiff was handed his termination letter and was told that he had been terminated from his employment with Defendant.

56. Black, because of his tacit support for Payne's derogatory statements, allowed an atmosphere of harassment and intimidation against Plaintiff to germinate and continue to grow until Plaintiff was terminated in November 2016

57. Black did not do anything to stop the harassment against Plaintiff because of his national origin, although Black had the power and authority to intervene and order Payne to stop harassing Plaintiff and stop her behavior calculated to humiliate Plaintiff because of his national origin and age.

58. Black himself engaged in discrimination against Plaintiff because of his age.

59. Because Black's harassment of Plaintiff based on Plaintiff's age is also related to Plaintiff's complaint about the intimidation he faced as a result of his complaints to the union, Plaintiff initiated a separate action before the National Labor Relations Board (NLRB) to seek reinstatement based solely on violations over which the NLRB has jurisdiction.

60. The NLRB did not find sufficient basis to institute a claim against the Defendant based on the National Labor Relations Act.

61. Plaintiff was terminated on November 17, 2016 after Defendant and Defendant's agent, Black, subjected Plaintiff to acts that would constitute age and national origin discrimination as described above.

62. Blatant verbal abuse and statements condemning Plaintiff because of his national origin and age have been made against Plaintiff by his supervisors from 2012 until he was terminated.

63. Some of the discriminatory statements made with regard to Plaintiff included statements by supervisors and coworkers that Plaintiff should shut up at a meeting by saying "shut up you old man"

64. Plaintiff protested his description as old man to Reenie and Black, two supervisors and they both did nothing but laughed at Plaintiff.

65. On a Saturday in summer of 2016, Affie Hunte, James Walker, and employee Mohammed Plaintiff came to Plaintiff's work place to serve him papers and Plaintiff demanded representation, his supervisor, Affie responded by saying: this is what I go through with this old man. All three individuals laughed at plaintiff. Plaintiff reported the incident to defendant's managers including Black and no action was taken.

66. Supervisor Alexis Payne on several occasions in 2016 told Plaintiff that "we look at you as an elder and a father figure, not knowing that you are a cry baby at your age. you Geezer".

*67.* Supervisor Payne also made other derogatory comments including: You *old janitor at Citibank. You are not an Account Rep.*

68. Payne also commented that Plaintiff is a Nigerian fraudster, Nigerian drug dealer and a lying old man.

69. These derogatory comments and discriminatory comments reflect the improper ways supervisor Payne allowed age and national origin to become a factor in employment decision.

70. Plaintiff's age and national origin were among the factors the Defendants took into consideration in the termination of the Plaintiff because Black improperly and untruthfully alleged that Plaintiff was a difficult and bad employee when he was not. Additionally,

Black clearly from his comments to Plaintiff and other employees improperly allowed Plaintiff's national origin and age to become factors in employment decisions.

71. Black, Hunte, and Payne aided and abetted the Defendant in the discrimination alleged in this complaint.

72. The Plaintiff filed a timely complaint with the EEOC

73. The EEOC issued plaintiff a right to sue letter based on age and national origin discrimination amongst others.

74. The Plaintiff has timely filed this amended complaint in this court pursuant to right to sue letter received from the EEOC.

## AS AND FOR A FIRST CAUSE OF ACTION

75. Paragraphs 1 thru 74 are realleged as if set forth herein verbatim and incorporated by reference.

76. Defendant violated Plaintiff's rights under Article 15 of the New York Executive Law, New York Executive Law Section 296(1) by engaging in unlawful discriminatory practices against Plaintiff.

77. Defendant discriminated against Plaintiff because of his age and national origin when he was subjected to unlawful discriminatory practices. Plaintiff was subjected to hostile work environment and retaliation.

78. Black, Hunte, and Payne aided and abetted the Defendant in the discrimination alleged above.

## AS AND FOR A SECOND CAUSE OF ACTION

79. Paragraphs 1 thru 78 are realleged as if set forth herein verbatim and incorporated by reference.

80. Plaintiff was damaged by Defendant's actions that denied him equal terms and conditions of employment as set forth above, in violation of section 8-107.1 of the Administrative Code of the City of New York.

81. Defendant violated Plaintiff's rights pursuant to section 8-107.1 of the Administrative Code of the City of New York by discrimination against Plaintiff based on his age and national origin.

82. Black, Hunte and Payne aided and abetted the Defendant in discriminatory acts against Plaintiff.

83. The Defendant Subjected Plaintiff to Hostile work environment and retaliation under this cause of action.

## AS AND FOR A THIRD CAUSE OF ACTION

84. Paragraphs 1 through 83 are realleged as if set forth herein verbatim and incorporated by reference.

85. Plaintiff was subject to discrimination in violation of Title V11 and Age Discrimination in Employment Act.

86. Plaintiff was subjected to hostile work environment and retaliation in violation federal laws cited in this cause of action.

## **CLAIM FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief against Defendant or as otherwise stated:

a. A Declaratory judgment that the conduct, practices, and acts complained of herein are discriminatory and illegal.

b. A Declaratory judgment that Plaintiff was discriminated against on the grounds of national origin and age by Defendants.

c. A declaration that Plaintiff was subjected to hostile work environment and retaliation.

d. Declaration that Black, Hunte, and Payne aided and abetted defendant in the discriminatory practices against Plaintiff.

e. An order reinstating Plaintiff back to his employment with the Defendant

f. An order granting payment of all lost wages and benefits.

g. An order granting damages in an amount to be proven at trial.

h. That the Court tax the costs of this action against Defendant, including Plaintiff's attorney's fees incurred in the prosecution of this case.

i. Any and all further relief in law and equity deem necessary by the Court.

January 19, 2018

Respectfully submitted,

The Law Offices of Albert Van-Lare

125 Maiden Lane, Suite 510

New York, NY 10038

Tel. 212 608-1400

vanlareesq@aol.com-

*Albert Van-Lare*

By: _____

　　　Albert Van-Lare